IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Cory Jermaine Wilkins,<br>    Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:20cv1010 (CMH/IDD) |
| | ) | |
| Harold W. Clarke,<br>    Respondent. | ) | |

MEMORANDUM OPINION

Before the Court is respondent Harold Clarke's ("respondent") Motion to Dismiss a

petition for writ of habeas corpus filed by Virginia state prisoner Cory Jermaine Wilkins

("petitioner"). [Dkt. Nos. 11-13]. Petitioner opposes the motion. [Dkt. No. 17]. For the reasons

explained below, the Motion to Dismiss will be granted, and the petition will be dismissed.

## I. Background

Petitioner is currently in custody pursuant to a final judgment of the Circuit Court of

Fairfax County. [Dkt. No. 1]; Respondent's Exhibit ("REX") 1. This judgment entered

following a jury trial in which petitioner was found guilty of first degree murder and use of a

firearm in the commission of murder. [Dkt. No. 1]; REX 2. At a hearing on February 24, 2017,

the court sentenced petitioner to twenty-five years' incarceration, a sentence recommended by

the jury. [Dkt. No. 1]; REX 1.

This habeas action's origins trace further back in time, to 2004, when the Fairfax County

Police Department obtained a warrant that charged petitioner with gang participation for his

involvement in the April 4, 2004 shooting and death of Cristian Vazquez ("Vazquez" or "the

victim"). REX 3. Petitioner fled the Commonwealth of Virginia after the events of April 4 and

was not arrested pursuant to this warrant until late 2006, when he was extradited from

Tennessee. REX 7 at 4. After the Commonwealth faced difficulties with the memory of a witness, it nolle prosequied petitioner's charges and acquiesced to the expungement of petitioner's arrest record by the Fairfax Circuit Court. REX 4, 5. Later, however, the Circuit Court granted the Commonwealth of Virginia's motion to reopen the investigation into the death of Vazquez. Record No. 191116, Ex. A.

On July 16, 2015, a multi-jurisdictional grand jury indicted petitioner on the charges he would later face during trial in the Fairfax Circuit Court—the first degree murder of Vazquez and use of a firearm in the commission of murder. REX 6. On October 20, 2016, the trial court denied petitioner's motion to dismiss the indictment on speedy trial grounds. Id.

After petitioner was found guilty, he appealed his convictions to the Court of Appeals of Virginia. See Record No. 0495-17-4. Through counsel, petitioner raised two claims for relief:

1. "The trial court erred in denying Mr. Wilkins's motion to dismiss the indict for speedy trial violation."

2. "The trial court erred by overruling Mr. Wilkins's objection to the prosecutor's statements in his closing argument that were contrary to the evidence."

Id. The state intermediate court denied petitioner's appeal through a per curiam order entered October 11, 2017. Id. A three-judge panel of that court again denied the appeal on February 7, 2018. Id. Petitioner appealed to the Supreme Court of Virginia, which refused his petition on September 18, 2019. Record No. 180280; REX 8.

Petitioner then filed a pro se petition for writ of habeas corpus in the Supreme Court of Virginia, raising the following grounds for relief:

1. "Trial counsel was ineffective in not seeking the jury instruction of self-defense."

2. "Trial counsel was ineffective in failing to investigate and use at trial, evidence that the decedent was known for carrying weapons, of which the petitioner make trial counsel aware."

2

3. "Trial counsel was ineffective in failing to bring to the trial judge's attention what the petitioner witnessed to be a juror who was not impartial."

4. "Trial counsel was ineffective in failing to object to a statement made by the Commonwealth Prosecutor in his closing arguments."

Record No. 191116. Petitioner later attempted to amend his state habeas petition to include the following claim:

5. "Petitioner's rights to due process and the effective assistance of counsel, guaranteed by the Fifth and Sixth Amendments to the United States Constitution, was violated when trial counsel failed to investigate the facts and circumstances of the case."

Id.

Respondent filed oppositions to the motion to amend and the original petition, respectively, on December 12, 2019 and December 23, 2019. Id. The state supreme court denied petitioner's motion to amend by order dated January 21, 2020. Id. Petitioner filed a response to respondent's motion to dismiss on January 24, 2020, raising yet another ground for relief in the process—a claim that counsel was ineffective for failing to advise Wilkins that she would not seek a jury instruction on a self-defense theory. Id.

The Supreme Court of Virginia dismissed petitioner's petition on August 12, 2020. Id. The state supreme court found that the claim petitioner raised in his response to respondent's motion to dismiss was not properly before the court and thus denied relief as to that claim. Id. As to petitioner's other claims, the court found that petitioner had failed to establish that his trial counsel performed ineffectively as defined by the Supreme Court of the United States. Id.

On August 27, 2020, petitioner filed the petition now at issue, raising the following claims:

1(a). "Petitioner's right to a speedy trial, secured by the Fifth and Sixth Amendment[s] to the United States Constitution, and made obligatory to the state[s] by the Fourteenth Amendment[,] [was] violated when the state appellate courts upheld the trial court's denial of petitioner's motion to dismiss the indictment for speedy trial violation."

3

1(b). Detective Flanagan's use of expunged records and alleged violation of Virginia Code
§ 19.2-392.3 contributed to the intentional delay and prejudicial impact of the pre-
indictment speedy trial delay.

1(c). The Commonwealth acted with prosecutorial vindictiveness and violated petitioner's
due process rights by charging him with first degree murder.

1(d). The Commonwealth violated petitioner's right to cross-examination obtaining
Antonio Barnes as a witness and not calling him to testify at trial.

1(e). The Commonwealth violated petitioner's right to due process by knowingly using the
perjured testimony of Antonio Barnes at trial.

2(a). "Petitioner's right to effective assistance of counsel, secured by the Sixth Amendment
to the United States Constitution, was violated when defense counsel failed to seek a
jury instruction of self-defense which was the petitioner's most plausible defense."

2(b). Trial counsel was ineffective when she did not advise petitioner that she would not
seek a self-defense instruction at trial after she told him she would. Her failure
constituted a violation of Virginia Rule of Professional Conduct 1.4.

3. "Petitioner's right to effective assistance of counsel, secured by the Sixth Amendment
to the United States Constitution, was violated when defense counsel failed to
investigate that the decedent was well-known for carrying weapons, as established in
police reports, and use this evidence at trial."

4. "Petitioner's right to effective assistance of counsel, secured by the Sixth Amendment
to the United States Constitution, was violated when defense counsel failed to bring
to the trial judge's attention a juror who was not impartial."

5. "Petitioner's right to effective assistance of counsel, secured by the Sixth Amendment
to the United States Constitution, was violated when defense counsel failed to object
to inflammatory and prejudicial statements made by the Commonwealth prosecutor in
his closing arguments."

6. "Petitioner's right to effective assistance of counsel, secured by the Sixth Amendment
to the United States Constitution, was violated when defense counsel failed to
investigate the facts and circumstances of the case."

[Dkt. No. 1].[1]

---

[1] Petitioner did not style his petition to include the subclaims listed under Claims 1 and 2. [Dkt.
No. 1]. Instead, these subclaims claims are included by virtue of respondent's construction of
petitioner's claims, which respondent describes in the motion to dismiss. [Dkt. No. 13] at 5, n.5.
Because petitioner does not challenge this construction of claims and this construction allows for

## II. Exhaustion and Procedural Default

Respondent contends that Claims 1(b), 1(c), 1(d), 1(e), 2(b), and 6 are procedurally defaulted and thus not reviewable by this Court. [Dkt. No. 13] at 10. For the following reasons, the Court agrees.

### A.    *Standard of Review*

Before a state prisoner may file a petition for a writ of habeas corpus in federal court, the prisoner must first exhaust his claims in the state court system. 28 U.S.C. § 2254(b)(1)(A). Indeed, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). In Virginia, to exhaust state remedies, "a petitioner must present the same factual and legal claims raised in the [federal] petition to the Supreme Court of Virginia either by way of (i) a direct appeal, (ii) a state habeas corpus petition, or (iii) an appeal from a circuit court's denial of a state habeas petition." Sparrow v. Dir., Dep't of Corr., 439 F.Supp.2d 584, 587 (E.D. Va. 2006).

A successfully exhausted claim may nevertheless be deemed "procedurally defaulted" and barred from federal review if a state court denies that claim pursuant to an independent and adequate state law ground. See Harris v. Reed, 489 U.S. 255, 259 (1989). And a federal habeas court may deem a claim not presented to the highest state court exhausted and barred from review "if it is clear that the claim would be procedurally barred under state law if the petitioner [belatedly] attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

---

a more comprehensive analysis of petitioner's proffered bases for relief, the Court has adopted that construction.

Federal habeas petitioners may overcome procedural bars and receive review of their claims through a showing of cause and prejudice, see Gray v. Netherland, 518 U.S. 152, 162 (1996), or actual innocence, see McQuiggin v. Perkins, 569 U.S. 383, 386 (2013).  And, in Martinez v. Ryan, 566 U.S. 1 (2012), the Supreme Court provided habeas petitioners with an additional avenue for relief with respect to defaulted claims of ineffective assistance of counsel. Specifically, Martinez held that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  Martinez, 566 U.S. at 17.  To demonstrate that the underlying ineffective assistance claim is "substantial," the petitioner must show that that claim has "some merit."  Id. at 14.

**B.**     ***Analysis***

Review of the record reveals that petitioner has not presented Claims 1(b), 1(c), 1(d), or 1(e) to the Supreme Court of Virginia.  If petitioner were now to attempt to present those claims in a state habeas proceeding, the claims would be barred due to the relevant statute of limitations, which requires habeas petitions to be filed within two years of the judgment of the trial court or one year of the final disposition of a direct appeal, whichever is later.  See Va. Code § 8.01-654(A)(2).  As a result, under Fourth Circuit law, petitioner's claims are deemed simultaneously exhausted and defaulted.  See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (federal habeas claims are simultaneously exhausted and defaulted "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present her claims in order to meet the exhaustion requirement would now find the claims procedurally barred.") (internal quotation omitted).

6

Claims 2(b) and 6—though technically presented to the state supreme court—are also defaulted and barred from review. Indeed, petitioner raised Claim 2(b) in response to respondent's motion to dismiss and raised Claim 6 in a motion to amend his state petition for writ of habeas corpus. See Record No. 191116. Under state law, raising a new habeas claim in either of these manners is impermissible, and the Supreme Court of Virginia accordingly denied petitioner relief as to these claims. See id. (denying relief as to Claim 2(b) pursuant to Va. Code § 8.01-654(B)(2), which states that a petition for writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing," and Rule 5:7(e), which holds that a petitioner may not raise new claims without prior authorization by the court); see also id. (denying petitioner's motion to amend, thus rendering the claim not properly before the court; cf. Mixon v. Clarke, No. 1:16cv1372, 2017 WL 3095908, at *2 (E.D. Va. July 20, 2017) ("Here, to the extent that petitioner attempts to rely on facts and arguments that he raised for the first time in his unsuccessful Motion to Amend his state habeas application, his claims are both unexhausted and procedurally defaulted.")).

Each of the grounds invoked by the state supreme court—namely § 8.01-654(A)(2), the statute of limitations for habeas actions; § 8.01-654(B)(2), the statutory bar on successive habeas petitions; and Rule 5:7(e), a judicial rule requiring a petitioner to receive leave of court before filing additional claims not included in the initial petition—constitute independent and adequate state grounds on which to deny petitioner relief. See Ricks v. Virginia, No. 3:07cv296, 2008 WL 301992, at *3 (E.D. Va. Jan. 31, 2008) (discussing Fourth Circuit precedent holding that Va. Code § 8.01–654(A)(2) is an adequate and independent state procedural rule); Mackall v. Angelone, 131 F.3d 442, 445-46 (4th Cir. 1997) (stating that Va. Code § 8.01-654(B)(2) is an adequate and independent bar); Cutchin v. Pearson, No. 7:06cv10, 2006 WL 2659982, at *3

7

(W.D. Va. Sept. 15, 2006) (finding claims presented to Supreme Court of Virginia and denied review pursuant to Rule 5:7 were procedurally barred from review in federal court).

As a result, unless petitioner can show (1) cause and prejudice for his failure to satisfactorily exhaust his clams or (2) that he is actually innocent of the crimes for which he was convicted, this Court may not assess the merits of his defaulted claims.  Unfortunately for petitioner, the Court finds that he has made no such showing.  As respondent notes, petitioner was surely on notice of the factual basis of each defaulted claim at the time of his direct appeal and habeas proceedings, but neither his federal habeas petition nor his response to respondent's motion to dismiss address his failure to properly raise those claims in the state proceedings, let alone allege that his failure to do so was attributable to some legally cognizable outside cause. Petitioner's federal filings equally fail to suggest that he was actually innocent of the crimes for which he was committed.  Petitioner does not make an actual innocence argument, let alone supply the Court with new evidence to substantiate such an argument.  See Schlup v. Delo, 513 U.S. 298, 324 (1995) (to establish "actual innocence," a petitioner must produce "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial").

For the reasons stated above, the Court find that Claims 1(b), 1(c), 1(d), and 1(e) are procedurally barred from consideration in these proceedings.  Due to the Supreme Court's ruling in Martinez v. Ryan, 566 U.S. 1 (2012), the Court must discuss Claims 2(b) and 6 in additional depth, for although petitioner has not established cause and prejudice or actual innocence to excuse his default of these ineffective assistance of counsel claims, Martinez offers him an additional potential escape hatch should those claims prove "substantial."  Martinez, 566 U.S. at 17.  As previously stated, for the purposes of Martinez, a claim is "substantial" if it has "some

merit." Id. at 14. An ineffective assistance of counsel claim is meritorious if it "show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). For the reasons that follow, neither Claim 2(b) nor Claim 6 have any merit, and the claims will thus be denied.

As previously stated, in Claim 2(b) petitioner grieves that his attorney violated Rule 1.4 of the Virginia Rules of Professional Conduct when she instructed him she would pursue a self-defense jury instruction and later failed to do so. [Dkt. No. 1-2] at 11-12. Petitioner does not argue, though, that the outcome of his trial was likely to have been different had his attorney been forthright about her trial strategy and decision not to pursue such a self-defense jury instruction. It is conceivable that, had petitioner's attorney informed him of her intention not to seek a self-defense instruction, petitioner could have exerted additional pressure on her to do so. But petitioner does not make this argument, and, in any case, such an argument threatens to merge Claim 2(b) with Claim 2(a), which is a more traditional ineffective assistance of counsel claim based on counsel's failure to pursue the self-defense instruction, not her failure to inform petitioner of her intention to do so. On this basis, the Court does not consider Claim 2(b) to be substantial enough to overcome the procedural default of this claim and will accordingly deny relief as to this claim.[2]

Petitioner has also failed to convince the Court that Claim 6 is substantial and thus warrants forgiveness of his default. In the claim, petitioner argues that his rights to due process

---

[2] To the extent petitioner seeks to argue that his attorney's alleged violation of state ethics rules itself constituted ineffective assistance, such an argument is misplaced and does not entitle petitioner to relief. See Burt v. Titlow, 571 U.S. 12, 24 (2013) ("[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance, and we have held that a lawyer's violation of ethical norms does not make the lawyer *per se* ineffective.")

and effective assistance of counsel were violated when his attorney failed to investigate the facts

and circumstances of his case. [Dkt. No. 1-3] at 9. Specifically, petitioner claims that the trial

testimony of Antonio Barnes, Javier Espinosa, and Johnathan Reyes was fruit of the poisonous

tree that would have been excluded had counsel moved to suppress it based on the improper

reopening of his previously expunged criminal charges.[3] Id. at 14; [Dkt. No. 1-4] at 1, 3.

Even if suppression of these individuals' testimony were an appropriate remedy that

counsel could have obtained for petitioner,[4] petitioner has not established that it would have been

reasonably likely to lead to a different outcome. Indeed, as respondent convincingly argues,

petitioner's convictions were predicated on a broad foundation of evidence. Neither Javier

Espinosa nor Johnathan Reyes were present at the time of the victim's death and each testified

only to matters that occurred after the shooting. The exclusion of these witnesses' testimony

would not have affected the other testimony presented at trial, some of which came from

eyewitnesses who claimed to have seen petitioner shoot the victim at close range. Meanwhile,

---

[3] In short, the basis of petitioner's argument is that a detective impermissibly accessed his expunged criminal files in violation of § 19.2-392.3 of the Virginia Code, which renders such behavior a Class 1 misdemeanor. [Dkt. No. 1-3] at 13-14. Petitioner also argues that § 19.2-392.3 endowed him with a privacy interest, the violation of which infringed on his rights under the Fourth Amendment. [Dkt. No. 1-3] at 14; [Dkt. No 1-4] at 1. Because state actors violated his Fourth Amendment rights, he argues, the testimony that later emerged should and would have been suppressed had his counsel conducted a proper investigation and moved to suppress it.

[4] As respondent notes, other jurisdictions to consider arguments similar to petitioners have found that, absent an explicit exclusionary remedy associated with the law, an expungement statute does not provide constitutional protections. See, e.g., Reeb v. Woods, 751 F. Supp. 2d 484, 489–90 (W.D.N.Y. 2010) (ruling that federal habeas petition failed to state a constitutional claim to overcome default in alleging violation of state sealing and expungement statute, which did "not implicate a defendant's federal or state constitutional rights" (citing People v. Patterson, 78 N.Y.2d 711, 715 (1991) (ruling a defendant has no inherent or constitutional right under the sealing and expunging statute))); see also United States v. Jakobetz, 955 F.2d 786, 802 (2d Cir. 1992) (citing sealing statute and ruling that "[t]here is no authority to indicate that [the defendants'] constitutional rights have been violated. At most, [the defendants] may be able to argue that a New York court violated a statutory right under New York law").

petitioner himself, not the Commonwealth, called Antonio Barnes as a witness for his defense. Petitioner has thus failed to demonstrate how suppression of Barnes's testimony would have resulted in a change of tactics or evidence presented by the Commonwealth. For these reasons, Claim 6 is not substantial and does not warrant relief under <u>Martinez</u>.

### III.  Merits Review

In line with the analysis above, only Claims 1(a), 2(a), 3, 4, and 5 are properly before the Court. For the reasons explained below, each claim lacks merit.

**A.**    ***<u>Standard of Review</u>***

To obtain federal habeas relief, a state prisoner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). But the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits a federal court's authority to grant such relief. Pursuant to AEDPA, when a state court has addressed the merits of a claim raised in a subsequent federal habeas corpus petition, the reviewing federal court may not grant relief as to that claim unless the state court's adjudication was (1) contrary to or an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of the facts presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2). The question facing a federal district court, then, "is not whether [it] believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

A state court's decision is "contrary to" federal law if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially

indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A federal court should grant relief under the "unreasonable application" clause if it finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

In determining whether a state court's decision was based on an unreasonable determination of the facts established at a state court proceeding, a federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)). "The Supreme Court has found state factual findings unreasonable under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was 'too powerful to conclude anything but [what the petitioner claims],' and when a state court's finding was 'clearly erroneous.'" Landers v. Warden, Atty. Gen. of Ala., 776 F.3d 1288, 1294 (11th Cir. 2015) (quoting Miller–El, 545 U.S. at 265).

**B.    _Analysis_**

1.    Claim 1(a) – Due Process

In Claim 1(a), petitioner asserts that the trial court erred in denying his motion to dismiss his indictments for what he believed to be was a violation of his right to a speedy trial. [Dkt. No. 1-2] at 3. The Court of Appeals of Virginia[5] rejected this claim, holding as follows:

> [O]n April 14, 2014, Fairfax County police obtained warrants that charged appellant, Wilfredo Guzman, and Donnie Barnes, with gang participation for their suspected participation in the shooting, and subsequent death, of Christian Aranzana Vazquez ("the victim") on April 4, 2004. Guzman and Barnes pled guilty to the charges, and agreed to testify against appellant. Appellant fled Virginia following the victim's murder, and was not apprehended until December 2006 when he was extradited from Tennessee. When the Commonwealth

---

[5] See Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991) (in habeas proceedings, federal courts look to the last reasoned state court opinion and impute it to the higher court if the higher court issues an unexplained opinion upholding the judgment).

attempted to prosecute appellant in 2007, Barnes claimed that he had "memory problems" and was unable to testify against appellant. As a result, the Commonwealth *nolle prosequied* the charge against appellant in November 2007. In 2012, appellant moved to expunge his arrest for gang participation. After initially granting appellant's request, the court later allowed the Commonwealth to reopen the case to investigate whether it could obtain witness testimony against appellant. Before a newly empaneled multi-jurisdictional grand jury, the Commonwealth compelled several new witnesses to testify against appellant. These witnesses included three individuals who witnessed the victim's shooting and who assisted appellant in fleeing and disposing of evidence after the shooting. With the new evidence against appellant, on July 16, 2015, the multi-jurisdictional grand jury indicted appellant for murder and use of a firearm in the commission of a felony.

Appellant failed to meet his burden of proving that the Commonwealth had an improper purpose in delaying his trial. The court concluded there was neither direct evidence nor sufficient circumstantial evidence to prove that the Commonwealth delayed appellant's trial with an improper purpose. This "determination on the question of intent is a finding of fact to which we accord great deference and reverse only if clearly erroneous." *Sandoval v. Commonwealth*, . . . 768 S.E.2d 709, 716 ([Va. App.] 2015). In our review of the record, the evidence established that the court's determination was not "clearly erroneous." The Commonwealth was initially unable to try appellant in 2004 because he absconded from Virginia. When he was apprehended in 2007, an essential witness for the Commonwealth was unable to testify, and the Commonwealth lacked sufficient alternative evidence to prove its case. In 2012, before a newly empaneled multi-jurisdictional grand jury, the Commonwealth was able to compel additional witness testimony. This resulted in the grand jury's July 2015 indictment of appellant for murder and use of a firearm in the commission of a felony. Based on our finding that appellant failed to prove improper purpose, we decline to address whether he suffered actual prejudice from the delay. *See Kirbv v. Commonwealth*, . . . 653 S.E.2d 600, 603 n.2 ([Va. App.] 2007) ("In this case, as in all others, we seek to decide cases, 'on the best and narrowest ground available' from the record." (quoting *Miles v. Commonwealth*, . . . 645 S.E.2d 924, 925 ([Va.] 2007))).

Record No. 0495-17-4.

The state court's determination of this issue was neither contrary to nor an unreasonable application of federal law and equally was not predicated on an unreasonable determination of facts. As petitioner correctly notes, "due process is not violated simply because the defendant is indicted after a substantial [] delay." United States v. Stinson, 594 F.2d 982, 984 (4th Cir. 1979)

(citing United States v. Lovasco, 431 U.S. 783, 796 (1977).  A constitutional violation does occur, however, "when the delay actually prejudices the conduct of the defense and the government has intentionally delayed to gain some tactical advantage over the defendant or to harass him." Id. (citing United States v. Marion, 404 U.S. 307, 325 (1971) (emphasis added, internal quotation omitted).

The state court invoked language that echoed the federal law just discussed and correctly found that the prosecutor's delay was not rooted in efforts to gain a tactical advantage over petitioner.  Instead, as respondent highlights, several of the Commonwealth's early efforts to indict and prosecute petitioner were thwarted.  Indeed, petitioner fled the state following the 2004 incident and did not return until 2006.  Thereafter, the Commonwealth faced difficulty with respect to the memory of a witness.  These are not improper purposes for delaying an indictment. See, e.g., United States v. Nix, 601 F.2d 214, 215 (5th Cir. 1979) (noting defendant's flight in ruling "[t]he preindictment delay was of his own making and, whether prejudicial or not, is no defense to this prosecution"); accord United States v. Chappell, 854 F.2d 190, 195 (7th Cir. 1988).  The state court's determination is thus entitled to deference.

 2. Claims 2(a), 3, 4, 5 – Ineffective Assistance of Counsel

To prevail as to an ineffective assistance of counsel claim—as petitioner seeks to do in Claims 2(a), 3, 4, and 5—a petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced his defense.  See generally Strickland, 466 U.S. 668.  To satisfy the deficient performance prong, the convicted defendant must overcome the "strong presumption that counsel's strategy and tactics fall within the wide range of reasonable professional assistance." Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (internal quotations omitted).  The prejudice component requires a petitioner to "show that there

14

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland at 694.

"Surmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and "[e]stablishing that a state court's application of Strickland was unreasonable [or contrary to clearly established federal law] under § 2254(d) is all the more difficult," Harrington v. Richter, 562 U.S. 86, 105 (2011). Application of these two layers of deference effectively limits a federal court's review to a determination of "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Applying this standard, the Court considers petitioner's claims below.

a.    _Claim 2(a)_

In Claim 2(a), petitioner asserts that trial counsel was ineffective in failing to seek a jury instruction on self-defense, which petitioner argues was supported by the evidence presented and constituted his "most plausible defense." [Dkt. No. 1-2] at 13. In rejecting this claim, the Supreme Court of Virginia found that petitioner had satisfied neither the performance nor the prejudice prong of the Strickland test:

> The Court holds [this claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in _Strickland v. Washington_, 466 U.S. 668, 687 (1984). The record, including the trial transcript, demonstrates the incident leading to the murder began when members of different gangs gathered at the same motel for separate parties. A fight involving Cristian Aranzana-Vazquez ("Va[s]quez") of the South Side Locos gang and Donnie Barnes of the La Primera gang broke out in the parking lot. What started as a verbal altercation between
> Barnes and Vasquez ended in a fistfight. No witnesses saw Vasquez with any weapons, but Vasquez's acquaintances grabbed beer bottles and a metal "tow bar" to prevent others from jumping into the fray.
>
> Petitioner was in a motel room when the fight began. Antonio Barnes ("Antonio") of the La Primera gang, who described "the other gang" as having

15

bottles and "machetes," went to get petitioner. By the time petitioner entered the parking lot, Barnes and Vasquez had separated. Vasquez ran toward a nearby vehicle and, according [to] petitioner's friend Wilfredo Guzman, "put something behind his back." Sheri Adams, another friend of petitioner, saw "something black" in Vasquez's hand and "thought" he had a gun, but she was not able to identify the item he was holding. Guzman testified he, Barnes, and petitioner approached Vasquez as Vasquez began walking toward them "with one hand behind his back" and displaying gang signs with the other. Eventually they ended "in the same circle," and Guzman saw petitioner pull out a gun and shoot Vasquez. Guzman testified Vasquez never brandished a weapon and, when asked if Vasquez "actually had anything in his hands," Guzman stated he did not know. Additionally, witness Anna Valencia testified petitioner said something first and fired the gun after Vasquez responded. Two other witnesses also described petitioner as walking up to Vasquez, shooting him, and looking around before turning to walk toward a sport utility vehicle and leaving the scene.

At trial, petitioner's counsel did not request a jury instruction on self-defense, but the court instructed the jury on the defense of others. Counsel argued to the jury that petitioner went to the fight in the parking lot "because his friends are in trouble." Vasquez had a hand behind his back, and petitioner, believing his friends were "under attack," shot Vasquez to "protect[]" them.

A jury instruction "is proper only if supported by more than a scintilla of evidence." *Commonwealth v. Sands*, [553 S.E.2d 733, 736 (Va. 2001)]. "If the instruction is not applicable to the facts and circumstances of the case, it should not be given." *Id.* To establish self-defense in a prosecution for murder, the accused "assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors." *Id.* (internal quotation marks omitted); *see Yarborough v. Commonwealth*, [234 S.E.2d 286, 290 (Va. 1977)] (distinguishing between justifiable and excusable homicide in self-defense). "The 'bare fear' of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life." *Sands*, [553 S.E.2d at 736]. The accused's actions must be in response to "some overt act indicative of imminent danger at the time." *Id.* (internal quotation marks omitted). The danger must be immediate, pose a "real threat to one's safety," and "be of such a character as to afford a reasonable ground for believing there is a design to do some serious bodily harm." *Id.* (internal quotation marks omitted).

Nothing in the record supported the conclusion that Vasquez had committed an overt act indicative of imminent danger at the time petitioner shot him. Petitioner was not present when the fistfight began but inserted himself into the fray with a gun, approached Vasquez, said some unknown words to him, and then pulled out the gun and shot him once before looking around and walking away. *See Yarborough*, [234 S.E.2d at 290] (justifiable homicide requires person acting in self-defense to be "without any fault on his part in provoking or bringing on the

16

difficulty"); *cf. Avent v. Commonwealth*, [688 S.E.2d 244, 257 (Va. 2010)] (no error in denying motion to strike based on justifiable self-defense where, following altercation, angry defendant followed victim upstairs in victim's home carrying sawed-off shotgun). No witnesses saw Vasquez with a weapon of any kind, and there was no evidence petitioner observed Vasquez with a weapon. Similarly, there was no evidence Vasquez threatened or attacked petitioner, that petitioner apprehended any imminent danger, or that petitioner attempted to retreat or announce his desire for peace. *See Yarborough*, [234 S.E.2d at 290] (excusable homicide occurs when accused, despite being at fault, "when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm"); *cf. Avent*, [688 S.E.2d at 257] (no error in denying motion to strike based on excusable self-defense where defendant admittedly did not retreat and, after victim was shot, "was not acting out of 'reasonably apparent necessity to preserve his own life'"). Counsel reasonably could have determined the circumstances immediately surrounding the killing were insufficient to create a reasonable belief of an imminent danger that had to be met, and that seeking a jury instruction on self-defense would have been futile because the instruction was not properly supported by the evidence. *See Morva v. Warden*, [741 S.E.2d 781, 787 (Va. 2013)] ("Counsel is not ineffective for failing to raise frivolous arguments."). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Record No. 191116.

The state court's determination of this issue was neither contrary to nor an unreasonable application of federal law and equally was not predicated on an unreasonable determination of facts. The evidence at trial established that petitioner was not present when the conflict between Vazquez and Barnes began but later inserted himself into that conflict. Because in Virginia justifiable homicide requires a person acting in self-defense to be "without any fault on his part in provoking or bringing on the difficulty," see Yarborough v. Commonwealth, 234 S.E.2d 286, 290 (Va. 1977), and petitioner arguably "brought on the difficulty" by voluntarily entering the fracas, petitioner's counsel neither performed inadequately nor prejudiced petitioner by seeking a "defense of others" instruction in lieu of a self-defense instruction. See United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014) ("[I]t can be positively detrimental to a client's chances not to

17

set priorities but rather to scattershot the case by raising every objection at trial and pressing

every imaginable contention on appeal."); see also United States v. Neresian, 824 F.2d 1294,

1321 (2d Cir. 1987) (tactical decisions of trial attorney, if reasonably made, provide no basis for

ineffective assistance claim).  For these reasons, the state court's determination is entitled to

deference, and this claim is thus denied.

      *b.*    <u>*Claim 3*</u>

      In Claim 3, petitioner asserts that trial counsel was ineffective because counsel

failed to investigate and present evidence that the victim had a reputation for carrying

weapons, specifically that the victim had been arrested for discharging a firearm the prior

year. [Dkt. No. 1-2] at 14.  Petitioner claims that he told trial counsel that the victim was

arrested for discharging a firearm—something a family member was able to determine "easily"

on the internet—and that trial counsel told him she did not find anything on that charge. Id. at

15; [Dkt. No. 1-3] at 1.  The state court rejected this claim, holding as follows:

> [P]etitioner contends he was denied the effective assistance of counsel because
> counsel failed to investigate the victim's reputation for carrying weapons.
> Petitioner asserts he informed counsel the victim was "known to carry weapons"
> and "was arrested . . . for discharging a firearm in a local neighborhood" in the
> year prior to his death.  Petitioner asked counsel to research the issue before trial,
> but counsel told petitioner she did not find any such information.  Following
> petitioner's conviction and sentence, petitioner's family member found the
> information in an online search, thereby demonstrating counsel did not exercise
> due diligence in researching petitioner's case and presenting a "stronger self-
> defense argument."
>
> The Court holds [this claim] satisfies neither the "performance" nor the
> "prejudice" prong of the two-part test enunciated in *Strickland*.  Generally,
> "[e]vidence of a person's character or character trait is not admissible for the
> purpose of proving action in conformity therewith on a particular occasion." Va.
> R. Evid. 2:404(a). However, as an exception to this rule, evidence of a victim's
> character for violence is admissible when a defendant presents evidence of self-
> defense. Va. R. Evid. 2:404(a)(2); *Carter v. Commonwealth*, [800 S.E.2d 498,
> 502 (Va. 2017)]. The record, including the trial transcript, demonstrates the
> defense's theory of the case was that petitioner acted in defense of others, not in

self-defense. Petitioner neither pled self-defense nor presented any evidence of self-defense. Therefore, evidence of Vasquez's character for violence was inadmissible under Va. R. Evid. 2:404(a)(2). Additionally, petitioner alleges no facts about the circumstances of the victim's arrest or whether it resulted in a conviction. Petitioner also fails to allege how such an arrest approximately one year prior to the shooting carried "real probative value in showing present character," such that it would have been admissible in a self-defense case. *Carter*, [800 S.E.2d at 502] (internal quotation marks omitted). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Record No. 191116.

The state court's determination of this issue was neither contrary to nor an unreasonable application of federal law and equally was not predicated on an unreasonable determination of facts. As has already been established, petitioner's trial attorney's strategy of pursuing a "defense of others" theory in lieu of a self-defense theory was constitutionally sound. In that light, her failure to find or attempt to introduce evidence of the victim's character or past bad acts—evidence that is admissible in establishing a self-defense theory but is otherwise inadmissible under the Virginia Rules of Evidence—was eminently reasonable. Cf. Sherrod v. Clarke, No. 2:12-cv-00174, 2012 WL 12904086 (E.D. Va. Dec. 5, 2012) (recommending denial of ineffective assistance claim based on counsel's failure to introduce evidence which "would have been inadmissible based on hearsay"). And a federal court is not tasked with interpreting a state court's determination of the state's own rules or laws. See, e.g., Sharpe v. Bell, 593 F.3d 372, 382-83 (4th Cir. 2010) ("[The petitioner] argues that his attorney's failure to argue for the admission of [certain] testimony ... under North Carolina evidentiary law ... denied him the right to effective assistance .... [T]he [state] court found that [the petitioner] failed both prongs of Strickland because [the] testimony would not have been admissible .... The [federal habeas]

court cast aside this conclusion . . . . It is beyond the mandate of federal habeas courts, however, to correct the interpretation by state courts of a state's own laws.")

In this light, petitioner's argument that, had his counsel acted differently, "the jury would have been considering evidence of decedent's arrest for the concealed weapon and the petitioner's need to act in self-defense" rings hollow. [Dkt. No. 1-3] at 2. The state court's determination is entitled to deference, and this claim is thus denied.

        *c.*    <u>*Claim 4*</u>

In Claim 4, petitioner asserts that trial counsel was ineffective because counsel failed to bring an inattentive juror to the trial court's attention, thereby allowing an impartial juror to sit on the jury. [Dkt. No. 1-3] at 3-5. The state court rejected this argument, holding as follows:

> The Court holds [this claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner fails to allege sufficient facts supporting the conclusion the information he provided counsel unambiguously demonstrated the juror was biased against petitioner and not impartial. *See Blevins v. Commonwealth*, [590 S.E.2d 365, 368 (Va. 2004)] (defining impartial jury as one that is "capable and willing to decide the case solely on the evidence before it"); *see also* Black's Law Dictionary 192 (10th ed. 2014) (defining bias as "[a] mental inclination or tendency," which may be actual (genuine prejudice against person or subject), implied (due to kinship or close relationship), or inferable (disclosure of fact revealing possibility of partiality)). It is unclear when during the trial the juror made the alleged facial expressions and uttered the unidentified words in petitioner's direction. There is no evidence the juror's countenance resulted from improper bias toward petitioner, as opposed to the evidence at trial, which was sometimes graphic and which indisputably showed petitioner had approached Vasquez and shot him at close range before walking away. Counsel reasonably could have decided to observe the witness for definitive signs of bias before raising the issue with the court, if at all. *See United States v. Powell*, 850 F.3d 145, 150 (4th Cir. 2017) (whether to call court's attention to possible evidence of bias that is, at best, ambiguous is tactical decision that can be reasonably balanced against potential for alienating singled-out juror). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Record No. 191116.

The state court's determination of this issue was neither contrary to nor an unreasonable application of federal law and equally was not predicated on an unreasonable determination of facts. Although petitioner implies counsel should have taken his perception of the juror in question as fact and informed the court of his observations, it was not unreasonable for counsel to have decided to observe the witness for definitive signs of bias before raising the issue with the court, if at all. See United States v. Powell, 850 F.3d 145, 150 (4th Cir. 2017) (whether to call court's attention to possible evidence of bias that is, at best, ambiguous is tactical decision that can be reasonably balanced against potential for alienating singled-out juror). For this reason, the state court's decision is entitled to deference, and the claim will be denied.

        d.     *Claim 5*

In Claim 5, petitioner asserts that trial counsel was ineffective because she failed to object during the Commonwealth's closing argument to the prosecutor's "inflammatory and prejudicial" statement that the victim was "choking on his own blood." [Dkt. No. 1-3] at 6. The Supreme Court of Virginia rejected this claim, holding as follows:

> The Court holds [this claim] satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates Vasquez was killed by a bullet that entered his chest, went through his trachea and spinal column, and exited his back. The assistant chief medical examiner, who performed the autopsy, testified the gunshot caused "hemoaspiration," or the breathing of blood into the lungs. She explained the blood interfered with Vasquez's "efforts to breathe" and that he "essentially drowned in his blood."

> Later, the Commonwealth called witness Anna Valencia, who testified Vasquez could not walk away after being shot and lay on the ground. She stated Vasquez "was like choking on his blood." Petitioner's counsel objected to Valencia's statement on the basis of foundation. The trial court sustained the objection and directed the jury to disregard the "comment about the blood."

During closing arguments, the Commonwealth addressed the jury about malice. The Commonwealth described the offense as a deliberate, willful, and unprovoked shooting resulting in a bullet that "went through [Vasquez's] windpipe." The Commonwealth added, "I don't know how much more cruel, again, an act you can do, and the cold, be left on the cold pavement to be paralyzed from a .40 caliber bullet, to be left gasping and choking on your own blood." Petitioner's counsel did not object. Counsel reasonably could have determined the Commonwealth's closing argument was factually supported by the medical examiner's testimony of the victim's injuries and cause of death. *See Graham v. Cook*, [682 S.E.2d 535, 544 (Va. 2009)] ("[T]he purpose of closing argument is to draw the jury's attention to the body of evidence that has been admitted into the record and to argue reasonable inferences that may be drawn from that evidence."); *see also* Webster's New Third International Dictionary 396 (1993) (defining "choke" as "to make normal breathing difficult or impossible for (a person or animal ... by obstructing or clogging the windpipe ... or [by] adulterating air being breathed"). Because the Commonwealth's argument was a proper comment based upon the evidence, counsel reasonably could have concluded an objection to the statement would have been unsuccessful and that pursuing a meritless objection could have drawn attention either to the statement itself or the medical examiner's testimony of how the gunshot wound caused the victim to drown in his blood. *Cf. Bennett v. Angelone*, 92 F.3d 1336, 1349–50 (4th Cir. 1996) (observing counsels' decision not to object during closing argument "is a standard trial tactic" and that the failure to object did not render counsel constitutionally ineffective). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Record No. 191116.

The state court's determination of this issue was neither contrary to nor an unreasonable application of federal law and equally was not predicated on an unreasonable determination of facts. As an initial matter, petitioner's argument appears to be based on an incomplete understanding of the record. He correctly asserts that the trial court instructed the jury to disregard witness Anna Valencia's comments that the victim "was like choking on his own blood." On this basis, petitioner suggests that the prosecutor's invocation of this language was improper. Petitioner does not address the point made by the Supreme Court of Virginia, which is that another witness—a medical examiner—stated that the victim "essentially drowned in his

22

blood." Counsel did not object to this testimony, nor did the trial court instruct the jury to ignore it. Accordingly, to the extent petitioner now argues that there was not evidentiary basis for the prosecutor's remarks and that his attorney improperly failed to object on that basis, he is incorrect.

To the extent petitioner instead argues that counsel should have objected to the prosecutor's comments on the mere basis that they were inflammatory and improperly prejudicial, her failure to do so equally fails to entitle petitioner to relief. As the Supreme Court of Virginia reflected, "pursuing a meritless objection could have drawn attention either to the statement itself or the medical examiner's testimony of how the gunshot wound caused the victim to drown in his blood." Record No. 191116 (citing Bennett v. Angelone, 92 F.3d 1336, 1349–50 (4th Cir. 1996) (observing counsels' decision not to object during closing argument "is a standard trial tactic" and that the failure to object did not render counsel constitutionally ineffective)). The state court's determination is thus entitled to deference, and this claim will be denied.

## IV. Conclusion

For the reasons stated above, respondent's Motion to Dismiss will be granted through an Order that will accompany this Memorandum Opinion.

Entered this 27th day of _____Aug_____ 2021.

_Claude M. Hilton_
United States District Judge

Alexandria, Virginia

23